Argued July 28, reversed August 25, petition for rehearing denied
September 14, petition for review denied November 8, 1972

KIENE, *Respondent, v.* WEYERHAEUSER
COMPANY (No. 31558), *Appellant.*

500 P2d 475

*Ridgway K. Foley, Jr.,* Portland, argued the cause
for appellant. With him on the briefs were Souther,

520

Spaulding, Kinsey, Williamson & Schwabe, Kenneth D. Renner and Robert E. Joseph, Jr., Portland.

*Benton Flaxel,* North Bend, argued the cause for respondent. With him on the brief were Flaxel, Todd & Flaxel, North Bend.

Before SCHWAB, Chief Judge, and FORT and THORNTON, Judges.

THORNTON, J.

Employer appeals from a judgment of the circuit court for Coos County which reversed an administrative order of the Workmen's Compensation Board denying claimant compensation for a heart attack which occurred at his place of employment on February 24, 1970.

Employer contends that the circuit court erred in finding:

(1) That claimant's claim was not barred by failure to give timely notice as required by ORS 656.265 (1), (4)(a); and

(2) That claimant sustained his burden of proving a medical causal connection between his work and his heart attack.

Claimant was employed as a clipperman by the Weyerhaeuser Company. On February 24, 1970, he arrived at work and found that the lathe had broken down. In this situation his responsibility was to assist with the dryer feeder.

At approximately 8:30 that morning the lathe was again operating and claimant then proceeded, apparently in somewhat of a rush, to the clipper station, crossing about 50 to 75 yards and ascending a flight of stairs.

While on the stairs he suffered a chest pain. He then continued up the stairs, reached a chair and called to another employe for assistance. The foreman was summoned, and the claimant was driven to his home. Before leaving the mill claimant was stricken with two additional attacks of chest pain, a fourth attack also occurring after he ascended the flight of stairs to reach his home.

Claimant saw his doctor that same day and was given a cardiogram. However, the cardiogram only revealed abnormalities, apparently reflecting arteriosclerosis, which had previously appeared in an EKG taken of claimant in June 1968. Claimant was given medication and sent home. The chest pains continued and intensified, however, so that claimant returned to his doctor on February 27, 1970, and was then hospitalized. A cardiogram taken in the hospital indicated a myocardial infarction.

Claimant remained in the hospital approximately three weeks, and did not return to work until July 28, 1970. He then worked until August 9, when an occurrence of lung congestion again required him to be hospitalized. A second return to work was also terminated by an episode of lung congestion on October 5. Claimant has not worked since that date. He does not claim that the two attacks of lung congestion were separate compensable incidents arising from his employment, and they are relevant to this appeal only as continuations of the heart condition stemming from the myocardial infarction.

Claimant did not file notice of a claim for workmen's compensation benefits until November 19, 1970, almost nine months after the initial incident of chest pain on February 24, 1970. Prior to filing for work-

men's compensation, however, claimant had twice claimed benefits under a group health policy, the "Nelson Trust." On the first of these claim forms, filed in February 1970, in a box used to indicate whether applicant also sought workmen's compensation benefits, claimant checked "No."

On the second claim, filed in October 1970, claimant first indicated "Yes" as to his intention to obtain workmen's compensation, and then, on a second form, again checked "No."

The same Weyerhaeuser personnel administer claims for both the Nelson Trust and workmen's compensation.

Weyerhaeuser denied claimant's workmen's compensation claim on December 1, 1970, on the basis that "Your condition did not arise out of your employment." Both the hearing officer and the Workmen's Compensation Board affirmed this position, also citing possible prejudice to the employer from the claimant's tardy filing.

Claimant appealed to the circuit court which found that he had sustained a compensable accidental injury "arising out of and in the course of his employment with Weyerhaeuser Company and that the nature of claimant's injury was myocardial infarction." The circuit court further held that the claimant was not barred by failure to give timely notice under ORS 656.265, since the employer had not been prejudiced by the delay, and had prior knowledge of the incident which led to the claim.

We first consider whether claimant sustained a "compensable injury" within the meaning of ORS 656.002(6).

■ The question is "whether the work-related

stresses or exertion were a material contributing factor in producing the heart attack." *Mayes v. Compensation Dept.*, 1 Or App 234, 237, 461 P2d 841 (1969). This is a question of fact which this court determines on a *de novo* review of the record. *Coday v. Willamette Tug & Barge*, 250 Or 39, 440 P2d 224 (1968); *Mayes v. Compensation Dept.*, supra.

The difficulty of this factual determination has been often emphasized by this court. *Cardwell v. SAIF*, 6 Or App 175, 486 P2d 587, Sup Ct *review denied* (1971); *Sahnow v. Fireman's Fund Ins. Co.*, 3 Or App 164, 470 P2d 378 (1970), *affirmed* 260 Or 564, 491 P2d 997 (1971). The difficulty is only compounded, when, as here, the medical testimony is in apparent conflict.

The only medical testimony was that of the claimant's personal physician, Dr. French, and that of Dr. Johnson, a specialist in internal medicine, called in to treat claimant after his hospitalization for myocardial infarction.

Dr. French testified that he did not believe that claimant's work-related exertion on February 24, 1970, was a material contributing factor in producing claimant's heart attack.

Dr. Johnson did not testify at the hearing. However, his letter to claimant's attorney was received into evidence, and in this letter Dr. Johnson stated that,

> "It is my opinion that the work he was doing at that time, *assuming* it was more than he was accustomed to, was directly related to the subsequent pain and eventual myocardial infarction * * *." (Emphasis supplied.)

The basis for Dr. Johnson's assumption is unclear.

The uniqueness of claimant's exertion in going from the dryer feeder to the clipper station is also in dispute. Claimant testified that he ran the distance, and that the lathe was very rarely down in the morning. However, he also admitted that the lathe was often down two or three times per week.

■ The ambiguity and conflict in the medical testimony as regards the issue of medical causation here as in many heart attack cases are not unusual. However, in this case the medical, and other, ambiguities must weigh against the claimant, for he bears the burden of proof as to medical causation. *Cardwell v. SAIF*, supra; *Swanson v. Westport Lumber Co.*, 4 Or App 417, 479 P2d 1005 (1971).

■ From an examination of the conflicting and ambiguous medical testimony in this case we conclude that claimant has failed to meet his burden of proving a medical causal connection between his work and his heart attack.

In view of the above conclusion it is unnecessary for us to consider the employer's other assignment of error.

Reversed.

SCHWAB, C.J., concurring.

I concur in the majority opinion and would only add that I think there is also much merit in the contention that the claim was barred by failure to give timely notice, and further that the claimant by his own acts is estopped from contending otherwise.

FORT, J., concurs.